UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NICOLAS NOORDHOF,

      Plaintiff,

    v.                                       Civil No. 07-6208-HA

                                          OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

HAGGERTY, Chief Judge:

      Plaintiff Nicolas Noordhof seeks judicial review of a final decision by the Commissioner

of the Social Security Administration denying his application for Disability Insurance Benefits

(DIB). This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

405(g). For the following reasons, the Commissioner's decision is reversed and remanded for

further proceedings.

**<u>STANDARDS</u>**

1- OPINION AND ORDER

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  Additionally, for the purposes of DIB, a plaintiff has the burden of proving disability prior to his or her insured status.  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits.  20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to the second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment or impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA.  *See* 20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings).  The Listings describe impairments which qualify as severe enough to be construed as *per se* disabling.  20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

2- OPINION AND ORDER

The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings for a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step and determines if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

3- OPINION AND ORDER

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act.  20 C.F.R. § 404.1520(f)(1).  If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility.  20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).  The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, so long as one of the interpretations supports the decision of the Administrative Law Judge (ALJ). *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Tackett*, 180 F.3d at 1098.  The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome.  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision.  *Reddick*, 157 F.3d at 720.

## FACTS

The relevant facts, which are drawn from the extensive administrative record and the ALJ's decision, are summarized here. Plaintiff was forty-eight years old at the alleged disability onset date and sixty years old at the time of his hearing. Plaintiff has a high school diploma and has completed two years of college. Plaintiff has past relevant work experience in photo supply and equipment sales, and as a trade show sales representative and order taker.

Plaintiff protectively applied for benefits on January 21, 2004, alleging disability beginning January 1, 1994, from physical impairments including a left leg amputation below the knee, degenerative osteoarthritis in both thumbs, Carpal Tunnel Syndrome, obesity, hypertension, allergic rhinitis, and bilateral upper extremity problems. Plaintiff's insured status expired on December 31, 1998. Plaintiff's application was denied initially and on reconsideration. The ALJ conducted a hearing on March 7, 2006, at which he heard testimony from plaintiff, who was represented by counsel, and a vocational expert (VE).

On September 27, 2006, the ALJ issued a decision finding that plaintiff was not disabled as defined in the Social Security Act prior to his date last insured. The Appeals Council declined plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Plaintiff subsequently initiated this action.

## SUMMARY OF ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had not engaged in SGA since his alleged disability onset date. Tr. 18, Finding 2.[1]

---

[1] Tr. refers to the Transcript of the Administrative Record.

At step two, the ALJ found that plaintiff had the following medically determinable impairments prior to his date last insured: left leg amputation below the knee, obesity, hypertension, and allergic rhinitis.  Tr. 18, Finding 3.

At step three, the ALJ found that plaintiff's impairments, singly or in combination, did not meet or equal the requirements of any listed impairment.  Tr. 20, Finding 4.

The ALJ determined that plaintiff had the RFC to lift and carry ten pounds occasionally or frequently, stand and/or walk for two hours in an eight hour workday, and sit for the remaining six hours.  Tr. 21, Finding 5.

At step four, the ALJ found that, prior to his date last insured, plaintiff was capable of performing his past relevant work as a photo supply and equipment sales clerk.  Tr. 25, Finding 6.  This finding made step five unnecessary.

**DISCUSSION**

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or for an award of benefits due to a number of alleged errors including: (1) improperly rejecting the opinion of a treating physician, and (2) failing to obtain medical expert testimony to determine plaintiff's disability onset date.

**1.      Treating Physician's Opinion**

Plaintiff argues that the ALJ erred in not giving controlling weight to the opinion of treating orthopedic surgeon, Dr. Siebold.  As a treating physician, the opinion of Dr. Siebold cannot be lightly disregarded.  However, "it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  The ALJ may reject the contradicted opinion of a treating or examining physician by

6- OPINION AND ORDER

stating specific and legitimate reasons, and may reject an uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

In this case, the ALJ rejected the opinion of Dr. Siebold because he "inconsistently describes the date the claimant became disabled." Tr. 24.  Doctor  Siebold identified at least three different disability onset dates.  In different letters, Dr. Siebold identified plaintiff as having become disabled by 1999, February 25, 1998, and January 1, 1994.  *Id.* at 25.

Doctor Siebold's letters are not necessarily contradictory:  It is entirely possible that Dr. Siebold was tailoring his opinions to different audiences.  In writing to an insurance company in 2003, Dr. Siebold opined that "plaintiff was essentially disabled by February 15, 1998." Tr. 251. It is possible that Dr. Siebold was only asked for his opinion by the insurance company with respect to whether plaintiff was disabled by 1998.  One year later, Dr. Siebold wrote to the same insurance company and wrote that plaintiff had been disabled since his last surgery which took place "approximately in 1999." Tr. 225.   Later still, when asked to set a definitive onset date for social security purposes, Dr. Siebold may have reviewed his records more carefully and determined that plaintiff had been disabled since January 1, 1994. Tr. 406.  Additionally, the statements that plaintiff was "disabled by February 15, 1998," or since his last surgery in 1999, do not necessarily invalidate the statement that plaintiff was disabled in 1994.  These declarations are open to some interpretation.

In rejecting the conclusions of Dr. Siebold, the ALJ also noted that plaintiff had not sought treatment for his upper-body impairments until after his date last insured.  *Id.*  It is possible that Dr. Siebold was able to gain a more accurate opinion regarding plaintiff's disability

7- OPINION AND ORDER

onset date as plaintiff came forward with complaints of bilateral upper extremity problems.  Dr.

Siebold may have been able to infer an onset date from the severity of plaintiff's osteoarthritis

and other upper extremity impairments.  The ALJ also noted that plaintiff and Dr. Siebold

"correspond as friends." Tr. 25.  There is little basis to infer that Dr. Siebold was acting

inappropriately on behalf of plaintiff.

Given the inconsistent statements of Dr. Siebold, and the fact that plaintiff had not

complained to Dr. Siebold of his upper-body impairments prior to the expiration of his insured

status, the ALJ was not required to accept Dr. Siebold's statement that plaintiff has been disabled

since January 1, 1994.  However, the ALJ was required to further develop the record in order to

resolve these inconsistencies.  "In Social Security cases the ALJ has a special duty to fully and

fairly develop the record and to assure the claimant's interests are considered." *Brown v.*

*Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  This duty exists even when the plaintiff is

represented by counsel.  *Id.*  In this case, the ALJ had a duty to develop the record regarding the

basis for Dr. Siebold's inconsistent opinions.  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.

1996).

The ALJ gave no weight to the opinion of Dr. Styner, who examined plaintiff on March

10, 2005.  *Id.*  Doctor Styner opined that plaintiff had the RFC to stand and/or walk for two

hours in an eight hour day and to sit for only four hours in an eight hour day.  *Id.*181-82.

Additionally, Dr. Styner opined that plaintiff is "100% totally disabled for social security

purposes," and "would not be capable of regular attendance at work." *Id.* at 176, 182.  The ALJ

"assume[d] that there'd [sic] be no work that someone could do" with such limitations, and did

not incorporate the opinion of Dr. Styner when positing questions to the VE.  *Id.* at 509.

8- OPINION AND ORDER

The ALJ justified rejecting the opinion of Dr. Styner because he did not evaluate plaintiff until after the expiration of plaintiff's insured status. Doctor Styner's opinion was ambiguous with respect to when he believed plaintiff first became disabled. Because Dr. Styner did not evaluate plaintiff until several years after the expiration of his insured status, the ALJ was not required to assume his opinion related back to the period in question. However, given the severity of the impairments identified by Dr. Styner, and the fact that there is little reason to believe plaintiff's ability to stand and sit have deteriorated significantly since 1998, the ALJ had a duty to further develop the record with respect to a disability onset date.

While the opinions of Drs. Seibold and Styner may not provide a reliable disability onset date, there can be little doubt that plaintiff is currently disabled. The only question that remains is when plaintiff first became disabled.

**2.      Disability Onset Date**

Plaintiff contends that the question of disability onset should have been put to a medical expert, and that it was legal error for the ALJ not to call upon the services of such an expert. This court agrees. In *Armstrong v. Commissioner of Social Security Administration*, the Ninth Circuit determined that under SSR 83-20, an ALJ should consult with a medical advisor when a disability onset date must be inferred. 160 F.3d 587, 589 -590 (9th Cir. 1998). Citing SSR 83-20, the court reasoned that:

> 'In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is

9- OPINION AND ORDER

information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.'

In *DeLorme,* we held that in this context 'should' means 'must.' If the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'

*Id.* (citing SSR 83-20; *Delorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991))(citation omitted);

*see also Morgan v. Sullivan*, 945 F.2d 1079, 1082-83 (9th Cir. 1991).

Here, the medical evidence conclusively establishes that plaintiff is disabled for purposes of the Social Security Act.  In order to establish an onset date, the ALJ should have consulted with a medical expert.  Defendant contends that because the ALJ determined that plaintiff was not disabled and could return to work, he was not required to consult with a medical expert to determine a disability onset date.  Defendant is incorrect; plaintiff is plainly disabled and the ALJ impliedly inferred that the onset date was after plaintiff's date last insured.  Without the aid of a medical expert, the ALJ was not in a position to make this inference.

Defendant argues that this court should rely on *Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1995).  In that case, the Ninth Circuit held that the ALJ was not required to call upon a medical expert to determine an onset date because the ALJ had determined that the claimant was not disabled.  In the instant case, plaintiff is disabled but the evidence does not clearly establish the disability onset date.

Defendant also seeks to distinguish the case at bar from *Armstrong* and *Sullivan*, arguing that in those cases, the ALJ found the claimants disabled and eligible for Supplemental Security Income (SSI) benefits.  Defendant points to a distinction without a difference.  This court sees no reason why a claimant who is only seeking DIB should be treated any differently than a claimant

10- OPINION AND ORDER

seeking both DIB and SSI, or why an ALJ should have a duty to develop the record in one case, but not the other. Had plaintiff applied for DIB and SSI, the ALJ would have been required to find plaintiff disabled for purposes of SSI, and under *Armstrong*, would have been required to call on a medical expert to infer an onset date. This court concludes that the mere fact that plaintiff did not apply for SSI should not change the outcome in this case.

A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made. Pursuant to this remand, the ALJ shall develop the record in consultation with a medical expert to infer a disability onset date. Additionally, the ALJ shall develop the record with respect to Dr. Siebold's opinions. Plaintiff shall have the opportunity to submit additional evidence regarding the onset of his alleged bilateral upper extremity impairments.

11- OPINION AND ORDER

**CONCLUSION**

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C.

§ 405(g), the decision of the Commissioner must be REVERSED and REMANDED FOR

FURTHER PROCEEDINGS consistent with this Order and the parameters provided herein.

IT IS SO ORDERED.

DATED this   3   day of November, 2008.


_____/s/ Ancer L. Haggerty_____

Ancer L. Haggerty

United States District Court